UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HAYDAR AL-YASIRY,

    Plaintiff,

vs.

UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICE,[1]

    Defendant.
_____/

Civil Action No.
07-CV-11633-DT

HON. BERNARD A. FRIEDMAN

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS
### and
## GRANTING DEFENDANT'S MOTION TO REMAND
### (DKT. NO. 5)

This matter is presently before the Court on Defendant's Motion to Dismiss or Remand. The Court has reviewed Defendant's motion, Plaintiff's response, and Defendant's reply. Pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), the Court will decide the motion without oral argument. The Court will remand the matter to Defendant.

**I.    HISTORY OF THE CASE**

    **A.    FACTUAL BACKGROUND**

Haydar Al-Yasiry ("Plaintiff") came to the United States from Iraq. (Pl.'s Compl., 1.) The United States Citizenship and Immigration Service ("Defendant" or "USCIS") indicates that

---

[1] Plaintiff, proceeding *pro se*, identifies Defendant as the Immigration and Naturalization Service ("INS"). The INS ceased to exist in 2003. While the INS had previously handled the adjudication of naturalization applications, that function is now handled by the United States Citizenship and Immigration Service. Therefore, the Court *sua sponte* amends the case caption to identify the proper Defendant.

Plaintiff filed his application for naturalization ("Form N-400") on May 23, 2003.[2] (Def.'s Mot., Ex. 1 ¶ 5.) On April 22, 2004, Plaintiff was interviewed at Defendant's district office in Detroit. (Pl.'s Compl., 2; Def.'s Mot., Ex. 1 ¶ 6.) At the time of the interview, Plaintiff states that he was told his required name check had not been completed, and that he would have to wait for the Federal Bureau of Investigation ("FBI") to complete the background check. (Pl.'s Compl., 2.) Defendant explains that it submitted the name check request to the FBI on June 4, 2003; however, the FBI has not completed its investigation. (Def.'s Mot., Ex. 1 ¶ 9.)

### B. PROCEDURAL HISTORY

On April 11, 2007, Plaintiff filed his Complaint. On June 18, 2007, Defendant filed its Motion to Dismiss or Remand.[3] On July 17, 2007, Plaintiff filed an untimely Response.[4] On July 24, 2007, Defendant filed a Reply.

## II. DEFENDANT'S MOTION TO DISMISS OR REMAND

In his Complaint, Plaintiff seeks a resolution of his application for naturalization. He states that it has been "a long time for a background check." (Pl.'s Resp., 1.) He asks Defendant to adjudicate his application—either for approval or denial—because he "can not wait longer just for the sake of waiting." (Id. at 2.) On the other hand, Defendant states that it cannot adjudicate

---

[2]Plaintiff also underwent a fingerprint check in 2003. However, a fingerprint check must be less than 15 months old at the time when Defendant administers its final adjudication of a person's naturalization application. As such, Plaintiff's fingerprint check expired on October 1, 2004. (Def.'s Mot., Ex. 1 ¶ 7.) Thus, in addition to waiting for the results of the FBI name check, Defendant will also have to request an updated fingerprint check. (Id. Ex. 1 ¶ 11.)

[3]On July 11, 2007, Defendant filed a Motion for Leave to File Supplemental Authority in Support of its Motion to Dismiss. The Court granted leave on July 19, 2007. The Court has reviewed the document.

[4]Although Plaintiff did not timely file his Response, the Court will nonetheless consider the document because Plaintiff is proceeding *pro se*.

Plaintiff's naturalization application at this time because "Congress [has] specifically prohibited [Defendant] from completing any individual's application for naturalization without prior notification from the FBI that a full criminal background check had been completed." (Def.'s Br. Supp. Mot., 4 and Ex. 1 ¶ 14.) As such, Defendant asks the Court to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction or, in the alternative, to remand the matter to Defendant.

Here, the pivotal issue is the meaning of "examination" in the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1447. Section 1446(b) states that "[t]he Attorney General shall designate employees of the Service to conduct examinations upon applications for naturalization." 8 U.S.C. § 1446(b) (2005). Further, Section 1447(b) states:

> If there is a failure to make a determination under section 1446 of this title before the end of the *120-day period after the date on which the examination* is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter . . . .

Id. § 1447(b) (emphasis added).

Defendant argues that the plain language of Section 1447(b)—as well as the corresponding federal regulations and considerations of public policy—demonstrates that the "examination" encompasses the entire review of an applicant's file and relevant materials, such as all background checks.[5] Defendant considers the personal interview as one part of the

---

[5] In addition, Defendant argues that the Court should defer to Defendant's interpretation of "examination" under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). In Chevron, the United States Supreme Court held that when a court is confronted with a statute that is "silent or ambiguous with respect to the specific issue," the court must defer to the agency's "[reasonable] construction of the statute." 467 U.S. at 843. However, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43.

"examination." Therefore, Defendant asserts that the 120-day clock begins to run at "the time all information required for a naturalization decision is gathered," not at the time of Plaintiff's personal interview. (Def.'s Br. Supp. Mot., 11.) As the FBI name check is still pending, Defendant argues that the 120-day clock has not yet been triggered. Thus, Defendant asserts that this Court has no subject-matter jurisdiction over Plaintiff's application under Section 1447(b).

The Court disagrees with Defendant. Under Section 1447(b), the 120-day time period is triggered by the applicant's personal interview. Based on the plain language of the statute, the Court finds that the "examination" in Section 1447(b) refers to a discrete event—the applicant's personal interview—and not to the overall process of collecting information to examine the applicant. Section 1447(b) plainly states that the "120-day period" begins to run "after *the date* on which the examination is conducted." That date is the date of the initial interview.

In addition, the corresponding federal regulations further indicate that Congress intended the "examination" in Section 1447(b) to refer to an applicant's personal interview. For instance, the regulations require that an "initial examination on the naturalization application [will be held] only after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed." 8 C.F.R. § 335.2(b). Such language shows that the examination and the FBI background check are distinct and separate events, and that the personal interview is not to be conducted until after the completion of the FBI background check. Furthermore, the regulations require that a "decision to grant or deny the application shall be made *at the time* of the initial examination or within 120-days *after the date* of the initial examination." Id. § 335.3(a) (emphasis added). Again, a

---

Here, the Court finds that the language of the statute is unambiguous, and that Congress's intent is clear. Therefore, Defendant is not entitled to Chevron deference.

4

specific date is identified as the trigger for the 120-day clock.

Moreover, the regulations' procedural instructions confirm that the "examination" refers to the applicant's interview. For instance, after filing a naturalization application, "each applicant shall appear in person before a Service officer designated to conduct examinations." Id. § 335.2(a). And, the "applicant may request the presence of an attorney or representative." Id. Plus, the regulations require:

> Prior to the beginning of the examination, the Service officer shall make known to the applicant the official capacity in which the officer is conducting the examination. The applicant shall be questioned, under oath or affirmation, in a setting apart from the public. . . . The Service officer shall maintain, for the record, brief notations of the examination for naturalization.

Id. § 335.2(c). Additionally, the regulations state that "[a]t the conclusion of the examination, all corrections made on the application form and all supplemental material shall be consecutively numbered and listed in the space provided on the applicant's affidavit contained in the application form." Id. § 335.2(e). Also, "[i]f the Service officer is proficient in the applicant's native language, the Service officer may conduct the examination in that language with the consent of the applicant." Id. § 335.2(f). Thus, the Court finds the language in the federal regulations clearly indicates that the "examination" is the applicant's interview, which is conducted on a specific date.

Lastly, the Eastern District of Michigan has previously held—on numerous occasions—that the "examination" in Section 1447(b) refers to the specific date of the personal interview, and that the 120-day time period for a decision is triggered on the date of that interview. See Khelifa v. Chertoff, 433 F. Supp. 2d 836, 841-42 (E.D. Mich. 2006) (finding that "[(1)] the 120-day statutory decisionmaking period commences when an applicant 'appear[s] in

5

person before a Service officer' as provided in the ["USCIS"] regulation that governs examinations, [and (2) that the] required criminal background check is separate from this 'examination,' and [(3) that] the 120-day period is not tolled pending its completion"); Al-Mohammed v. United States Citizenship and Immigration Serv., No. 07-10732, slip op. at 1-3 (E.D. Mich. July 9, 2007) (Duggan, J.) (same); Gharbieh v. Chertoff, No. 06-13869, slip op. at 2 (E.D. Mich. May 30, 2007) (Feikens, J.) (same); Abdelkarim v. Gonzales, No. 06-14436, slip op. at 3-4 (E.D. Mich. Apr. 30, 2007) (Edmunds, J.) (same); Osowa v. Gonzales, No. 06-15602, slip op. (E.D. Mich. Apr. 5, 2007) (Cox, J.) (same); Garcia-Guerra v. Chertoff, No. 06-14243, slip op. (E.D. Mich. Mar. 30, 2007) (Cleland, J.) (same); Zhang v. Chertoff, No. 05-72121, slip op. (E.D. Mich. Feb. 1, 2006) (Roberts, J.) (same); Mahmood v. Jenifer, No. 05-40154, slip op. (E.D. Mich. Nov. 30, 2005) (Gadola, J.) (same). Thus, consistent with the Eastern District's previous rulings, this Court finds that if more than 120 days have elapsed since the date of an applicant's "examination"—personal interview—then the Court has subject-matter jurisdiction under Section 1447(b).

Here, Plaintiff's initial interview was conducted on April 22, 2004. It is now mid-2007. Thus, the 120-day time period expired long ago. As a result, the Court has subject-matter jurisdiction over Plaintiff's Complaint.

However, the Court will remand the matter to Defendant. Section 1447(b) states that after establishing subject-matter jurisdiction, the court "may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." In remanding similar actions, the Eastern District has explained:

> [USCIS] and the federal law enforcement agencies with which it
> works in the investigative process have a great deal more expertise
> than the Court in both (i) identifying the potentially problematic

6

> information that has been uncovered in a background check, and (ii) following up to determine whether this information truly reflects legitimate national security or public safety concerns, or instead is merely a "false positive."

Khelifa, 433 F. Supp. 2d at 844. With neither the expertise nor the necessary information from the FBI, this Court is unable to adjudicate Plaintiff's application for naturalization. Therefore, the Court will remand the matter to Defendant. However, as the Eastern District has previously expressed, there is "widespread judicial concern and frustration that agency action on naturalization applications is unduly delayed in too many cases . . . by protracted FBI background checks that take months or even years to complete." Id. That said, the Court will remand the matter to Defendant for a prompt resolution following the completion of the FBI name check.

## III. CONCLUSION

For the reasons stated above, the Court finds that it has subject-matter jurisdiction over Plaintiff's cause of action. However, the Court will use its discretion under Section 1447(b) to remand the matter to Defendant. Accordingly,

IT IS ORDERED that Defendant's Motion to Dismiss is denied.

IT IS FURTHER ORDERED that Defendant's Motion to Remand is granted. This matter is remanded to Defendant for a prompt resolution, following the completion of the FBI background check.

IT IS FURTHER ORDERED that the case caption is amended to identify the

Defendant as the United States Citizenship and Immigration Service.

    \_\_\_\_s/Bernard A. Friedman_____
    BERNARD A. FRIEDMAN
    CHIEF UNITED STATES DISTRICT JUDGE

Dated: July 30, 2007
       Detroit, Michigan

**I hereby certify that a copy of the foregoing document was served this date upon counsel of record electronically and/or via first-class mail.**

_____**/s/ Patricia Foster Hommel**_____
        **Patricia Foster Hommel**
    **Secretary to Chief Judge Friedman**